RECEIVED
JUN 26 2008
AT 8:30 _____
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANKLIN GARDNER, | Civil Action No: 04-618 (FLW) (JJH) |
| Plaintiff, | |
| v. | **FINAL PRETRIAL ORDER** |
| GEORGE ACHEBE, EUNICE GREEN and CORRECTIONAL MEDICAL SERVICES, INC., | |
| Defendants. | |

This matter having come before the Court for a pretrial conference pursuant to Fed. R. Civ. P. 16 and Matthew S. Barndt, Esq. having appeared for plaintiff, and Timothy J. Galanaugh, Esq. having appeared for defendant; the following Final Pretrial Order is hereby entered:

1. **JURISDICTION** (set forth specifically).

This court has jurisdiction of this case pursuant to Sections 1331 and 1343 of Title 28 of the United States Code, and by virtue of Section 1983 of Title 42 of the United States Code and in accordance with the Eighth Amendment of the Constitution of the United States of America. Venue is appropriate in this court pursuant to Section 1391 of Title 28 of the United States Code because it is where the events complained of occurred.

2. **PENDING/CONTEMPLATED MOTIONS** (Set forth all pending or contemplated motions, whether dispositive or addressed to discovery or to the calendar. Also, set forth the nature of the motion and the return date. If the Court indicated that it would rule on any matter at pretrial, summarize that matter and each party's position).

   A. Plaintiff:

      1. Motion for Discovery Sanctions/Preclusion Orders for Failure to Produce the following Discovery:

         A. Employment records of Dr. George Achebe and Eunice Green at CMS

         B. Records related to CMS investigations or inquiries into Mr. Gardner's treatment

[handwritten margin note: All to be produced by 7/3/08 or preclusions ... MSD]

1

      C. A complete copy of the CMS Health Services Policy & Procedures Manual

      D. All specialist consultation requests for Mr. Gardner

B.   Defendants:

    1. Motion for summary judgment.

    2. Motion in limine regarding the state of plaintiff's medical condition while incarcerated in New York.

    3. Motion in limine regarding the state of plaintiff's medical condition while incarcerated in New Jersey Prison.

3. **STIPULATION OF FACTS** (Set forth in narrative form a comprehensive listing of all uncontested facts, including all answers to interrogatories and admissions, to which there is agreement among the parties).

    1. Plaintiff Franklin Gardner ("Mr. Gardner") was born on March 21, 1970 in New York.

    2. Mr. Gardner was incarcerated in Cayuga Prison in New York State in about 1990.

    3. Mr. Gardner sustained an injury to his left ear while he was incarcerated at Cayuga Prison in New York State.

    4. The injury to his left ear resulted in a keloid.

    5. A keloid is a scar which develops during connective tissue repair.

    6. Mr. Gardner had surgery while incarcerated at Cayuga Prison in New York State to remove the keloid.

    7. The keloid returned.

    8. Mr. Gardner was first incarcerated in New Jersey in 1994 in the Essex County Jail.

    9. On October 23, 1995 Mr. Gardner was admitted to the New Jersey Correctional System.

    10. In 1995, Correctional Medical Services, Inc. ("CMS") contracted with the State of New Jersey to provide

2

medical services to inmates in the New Jersey Correctional System.

11. Mr. Gardner was scheduled for surgery to remove the keloid on July 20, 2000.

12. Surgery did not take place on July 20, 2000, or anytime thereafter.

13. Mr. Gardner is presently incarcerated in the New Jersey Correctional System.

14. Defendant Eunice Green cannot be located and has not participated in this case since sometime in 2007.

4. **PLAINTIFF'S CONTESTED FACTS** (State separately for each plaintiff. Proofs shall be limited at trial to the matters set forth below. Failure to set forth any matter shall be deemed a waiver thereof).

    A. Plaintiff intends to prove the following contested facts with regard to liability:

1. In 1991, while incarcerated at Cayuga Prison in New York, Mr. Gardner was attacked by another inmate and sustained a serious injury to his left ear and neck that required surgery.

2. Surgery was successful. However, several months after his recovery, keloid scarring formed at the site of the injury.

3. Mr. Gardner's keloid was evaluated by a specialist. The specialist performed laser surgery in 1992 or 1993 and also planned to administer steroid injections to prevent the keloid from recurring.

4. Mr. Gardner was released from Cayuga Prison shortly after the laser surgery in 1992 or 1993 and the steroid injections were never administered.

5. Approximately six months later, the keloid gradually began to reappear.

6. On about November 2, 1995, Mr. Gardner became incarcerated at NJSP.

7. At the time of his incarceration at NJSP the keloid scarring on his ear was inflamed once again.

8. Almost immediately upon entering NJSP, Mr. Gardner sought medical attention for his keloid scarring.

9. Between 1996 and filing this lawsuit in February of 2004 Mr. Gardner made many written and oral requests to CMS personnel seeking medical treatment to relieve the constant and continuing pain, irritation, and disfigurement caused by his keloid scarring.

10. Plaintiff went so far as to write to local and state legislators, who, in turn, made written requests that the New Jersey Department of Corrections ("NJDOC") look into Mr. Gardner's complaints that he was not receiving medical treatment.

11. NJDOC made one or more written requests to CMS to address Plaintiff's issues.

12. CMS has no records of any response to NJDOC or any records relating to any investigation in response to NJDOC's request.

13. During the period from 1997 to 1999, Nurse Eunice Green refused to submit Mr. Gardner's medical requests and informed him that he would not receive surgery.

14. Sometime in about 1997 or 1998, Dr. George Achebe injected steroids into Mr. Gardner's ear, but did not follow up as promised. The steroid injections caused additional keloid growth.

15. Finally, in 2000, CMS scheduled Mr. Gardner to see a surgical specialist.

16. On January 11, 2000, surgeon Dr. David R. Hertzog evaluated Mr. Gardner, but found that the keloid was too extensive for his expertise and recommended that Mr. Gardner be seen by a plastic surgeon.

17. CMS approved that course of treatment and, on April 13, 2000, Mr. Gardner was evaluated by Dr. Parvaiz Akhtar Malik, a plastic surgeon.

18. Dr. Malik also recommended surgical removal of the keloid, describing it as "extensive."

19. As noted in his report, Dr. Malik advised Mr. Gardner that the keloid could reoccur, which Mr. Gardner already knew from prior experience.

20. Dr. George Achebe, the Regional Medical Director for NJSP, approved Mr. Gardner for surgery. Surgery was scheduled to take place on July 20, 2000.

21. On July 19, 2000, Mr. Gardner was taken to the infirmary, kept overnight for observation, and fasted all night to prepare for the general anesthesia that was to be administered during the July 20, 2000 surgery.

22. On July 20, 2000, however, Mr. Gardner was told that his surgery had been "rescheduled" without explanation.

23. As Mr. Gardner was handcuffed and departing the infirmary, Dr. Achebe entered the room and very quickly asked him how he felt about the surgery.

24. Mr. Gardner replied "good" and said that he wanted to proceed with the surgery, but Dr. Achebe had him removed from the infirmary.

25. CMS does not have any records signed by Mr. Gardner that confirm he refused to proceed to surgery on July 20, 2000.

26. Mr. Gardner denies that he refused the July 20, 2000 surgery because he was unaware that the keloid could possibly return.

27. Between July 20, 2000 and filing this lawsuit in February of 2004 Mr. Gardner continued to file written and oral medical requests with CMS personnel seeking medical treatment to relieve the constant and continuing pain, irritation, and disfigurement caused by his keloid scarring.

28. On April 16, 2008, plastic surgeon Dr. Parvaiz Akhtar Malik again agreed to perform surgery on Mr. Gardner to remove the keloid.

29. Mr. Gardner has not been scheduled for surgery.

30. Mr. Gardner's keloid has been diagnosed as requiring treatment.

31. Mr. Gardner's keloid is such that a lay person would easily recognize the necessity for a doctor's attention.

32. Delay in treatment has caused Mr. Gardner unnecessary and wanton infliction of pain.

33. Mr. Gardner's undue suffering or the threat of tangible residual injury was caused by denial of reasonable requests for medical care.

34. Care was intentionally refused to Mr. Gardner in spite of the knowledge that care is necessary.

35. Necessary treatment for Mr. Gardner has been delayed for non-medical reasons.

36. Arbitrary and burdensome procedures have resulted in endless delays and outright denials of care to Mr. Gardner.

37. Dr. George Achebe or other CMS employees or contractors ignored the medical needs of Mr. Gardner

38. Mr. Gardner has been prevented from receiving physician recommended treatment.

39. Mr. Gardner has been caused injury, pain and suffering and denied of proper medical treatment as a result of CMS' deliberate indifference

40. CMS has failed to take control of its employees or contractors despite knowledge that they were delaying or obstructing treatment for Mr. Gardner.

41. CMS has adopted a policy of ignoring Mr. Gardner's complaints and delaying treatment for his keloid.

42. CMS has failed to establish a policy regarding the care for keloids.

43. CMS has failed to establish a policy regarding the care of patients with chronic pain.

44. CMS has failed to establish a policy to prevent inordinate delays in treatment.

45. CMS has failed to establish a policy that ensures the requirements of the New Jersey Administrative Code are followed.

46. CMS has failed to ensure that its own policies and procedures are followed.

B. Plaintiff intends to prove the following contested facts with regard to damages: (This must include each item of damages, the amount of each item, the factual basis for each item and, if punitive damages are claimed, the facts upon which plaintiff will rely to establish punitive damages).

1. Mr. Gardner's keloid is disfiguring and has caused him persistent pain and irritation, depression and mental anguish, and has made him a target of abuse and harassment by other inmates.

5. **DEFENDANT'S CONTESTED FACTS** (State separately for each defendant. See instructions above).

   A. Defendant intends to prove the following contested facts with regard to liability.

      1. Plaintiff's original keloid was excused in 1993 while he was incarcerated in New York (Plaintiff's deposition, p. 8).

      2. The keloid returned within two to three months (Plaintiff's deposition, p. 9).

      3. Plaintiff sought no further treatment relating to the keloid while he was incarcerated in New York. (Plaintiff's deposition, p. 9).

      4. Plaintiff was scheduled for surgery for removal of his keloid on July 20, 2000.

      5. Plaintiff refused the surgery offered to him on July 20, 2000.

      6. Keloids do not generally present any symptoms (Achebe deposition, p. 80).

      7. Surgical removal of a keloid is a cosmetic procedure (Soliman deposition, p. 18).

      8. Removal of a keloid is not a medical necessity (Soliman deposition, p. 33).

      9. Plaintiff's keloid is not a "serious medical condition."

   B. Defendant intends to prove the following contested facts with regard to damages. (This statement must include the factual basis for each defense against plaintiff's claims for damages).

   [handwritten: surgery not medically necessary] [initials]

6. **PLAINTIFF'S WITNESSES** (Aside from those called for impeachment purposes, only those witnesses whose names and addresses are listed below will be permitted to testify at trial.

   A. On liability, plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

7

      1. <u>Franklin Gardner</u> – Will testify about all issues related to his keloid, including the pain, discomfort and impact on his life; treatment for his keloid; and the actions, inaction and behavior of CMS employees and contractors with regard to his keloid.

      2. <u>Dr. George Achebe</u> – Will testify about his role as the onetime Medical Director for CMS at NJSP, the operation of CMS, the medical policies and procedures of CMS and his role in Franklin Gardner's treatment.

      3. <u>Dr. Yasser Soliman</u> – Will testify about his role as current Acting Medical Director for all CMS facilities in New Jersey, the operation of CMS, the medical policies and procedures of CMS and his role in Franklin Gardner's treatment.

      4. <u>David Meeker</u> – Will testify about the operation, policies and procedures of CMS.

      5. <u>Eunice Green</u> – Will testify about her role as a nurse at NJSP, the operation of CMS, the medical policies and procedures of CMS and her role in Franklin Gardner's treatment.

  B.  On damages plaintiff intends to call the following witnesses who will testify in accordance with the following summaries:

      1. <u>Franklin Gardner</u> – Will testify that the keloid is disfiguring, that it has caused him persistent pain and irritation, depression and mental anguish, and has made him a target of abuse and harassment by other inmates.

  C.  Defendant objects to the following witnesses for the reasons stated:

Defendant objects to the testimony of plaintiff regarding depression and mental anguish. *[handwritten: Reserved for Trial Judge — MSG]*

7.  **DEFENDANT'S WITNESSES** (See instructions above).

  A.  On liability, defendant intends to call the following witnesses who will testify in accordance with the following summaries:

      1. Dr. George Achebe – Dr. Achebe will testify as to his responsibilities as a physician for CMS.

8

2. Dr. Yasser Soliman – Dr. Soliman will testify as to his responsibilities as Medical Director for CMS.

3. Mr. David Meeker – Mr. Meeker will testify as to the policies of CMS.

B. On damages defendant intends to call the following witnesses who will testify in accordance with the following summaries:

C. Plaintiff objects to the following witnesses for the reasons stated:

*None* ~MSB

8. **EXPERT WITNESSES** – N/A

9. **PLAINTIFF'S EXHIBITS** (Except for exhibits the need for which could not reasonably have been foreseen or which are used solely for impeachment purposes, only the exhibits set forth on the exhibit list attached hereto may be introduced at trial. Any objection to an exhibit, and the reason for said objection, must be set forth below or it shall be deemed waived. All parties hereby agree that it will not be necessary to bring in the custodian of any exhibit as to which no such objection is made).

A. Plaintiff intends to introduce into evidence the exhibits listed on the attached exhibit list (list by number with a description of each):

- **See attached Exhibit "A-1"**

B. Defendant objects to the introduction of plaintiff's exhibits (set forth number of an exhibit and grounds for objection):

- **See attached Exhibit "A-2"**  *Reserves ruling on MSB*

C. **DEFENDANT'S EXHIBITS** – ~~N/A~~ *Plaintiff's CMS Medical Chart* — *MSB*

Δ *No Plaintiff Objection*

9

(Copies of exhibits are to be made for opposing counsel, and a bench book of exhibits is to be delivered to the Judge at the start of trial. If counsel desires to display exhibits to the jury, sufficient copies should be available to provide each juror with a copy; alternatively, enlarged photographic or projected copies may be used).

10. **PLAINTIFF'S LEGAL ISSUES**

   1. Whether Dr. George Achebe and CMS were deliberately indifferent to Mr. Gardner's serious medical need. Specifically:

      A. Whether Mr. Gardner's keloid has been diagnosed as requiring treatment.

      B. Whether Mr. Gardner's keloid is such that a lay person would easily recognize the necessity for a doctor's attention.

      C. Whether a delay in treatment has caused Mr. Gardner unnecessary and wanton infliction of pain.

      D. Whether Mr. Gardner's undue suffering or the threat of tangible residual injury was caused by denial of reasonable requests for medical care.

      E. Whether care was intentionally refused to Mr. Gardner in spite of the knowledge that care is necessary.

      F. Whether necessary treatment for Mr. Gardner has been delayed for non-medical reasons.

      G. Whether arbitrary and burdensome procedures have resulted in endless delays and outright denials of care to Mr. Gardner.

      H. Whether George Achebe or other CMS employees or contractors ignored the medical needs of Mr. Gardner.

      I. Whether Mr. Gardner has been prevented from receiving physician recommended treatment.

   2. Whether CMS may be held liable for deliberate indifference. Specifically:

      A. Whether Mr. Gardner has been caused injury, pain and suffering and denied of proper medical treatment as a result of CMS' deliberate indifference?

      B. Whether CMS has failed to take control of its employees or contractors despite knowledge that they were delaying or obstructing treatment of Mr. Gardner.

C. Whether CMS has a policy of ignoring Mr. Gardner's complaints and delaying treatment for his keloid.

D. Whether CMS has failed to establish a policy regarding the care for keloids.

E. Whether CMS has failed to establish a policy regarding the care of patients with chronic pain.

F. Whether CMS has failed to establish a policy to prevent inordinate delays in treatment.

G. Whether CMS has failed to establish a policy that ensures the requirements of the New Jersey Administrative Code are followed.

H. Whether CMS has failed to ensure that its own policies and procedures are followed.

11. **DEFENDANT'S LEGAL ISSUES**

Whether or not plaintiff has proven he suffered from a "serious medical condition?"

Whether or not plaintiff has proven liability, proximate cause and damages on the cause of action of a violation of 42 U.S.C. § 1983?

Whether or not plaintiff has proven he has sustained any damage whatsoever?

Whether or not the actions of the defendants have violated any of the plaintiff's rights?

12. **CHOICE OF LAW** (If there is any issue as to what state's law is applicable to any count of the complaint, set forth the choice of law question. This issue shall be separately briefed in accordance with an order to be entered herewith).

- Federal Law applies to Plaintiff's claims of deliberate indifference in violation of the Eighth Amendment to the United States Constitution.

13. **MISCELLANEOUS** (Set forth any other matters which require action by, or should be brought to the attention of the Court).

- Plaintiff's Motion for Discovery Sanctions/Preclusion Orders for Failure to Produce the following Discovery:

PR01/ 728079.2

- ~~Employment records of Dr. George Achebe and Eunice Green at CMS.~~ [MSB]
- ~~Records related to CMS investigations or inquiries into Mr. Gardner's treatment.~~
- ~~A complete copy of the CMS Health Services Policy & Procedures Manual.~~
- All ~~specialist consultation~~ requests for Mr. Gardner.

- Advance notice to NJSP will be required to transfer Mr. Gardner to the courthouse for trial.

- Whether an agreement can be reached whereby Defendants agree to produce witnesses, or if they must be subpoenaed. *Defense agreed to produce all except Ms. Green* [MSB]

14. **JURY TRIALS** – Not later than __2 weeks prior to trial__

   A. Each side shall submit to the Judge and to opposing counsel a trial brief or memorandum in accordance with Local Civil Rule 7.2B, with citations to authorities and arguments in support of its position on all disputed issues of law. In the event a brief shall not be filed, the delinquent party's complaint or defense may be stricken.

   *case specific* [MSB]

   B. Counsel for each party shall submit to the Judge, with a copy to opposing counsel, written requests for instructions to the jury. Supplemental requests for instructions may be submitted at any time prior to argument to the jury. All requests for instructions shall be plainly marked with the name and number of the case, shall contain citations of supporting authorities, if any, and shall designate the party submitting the same. In the case of multiple requests by a party, these shall be numbered in sequence and each request shall be on a separate sheet of paper.

   C. Joint proposed verdict form/special interrogatories are to be submitted to the trial judge.

   D. *case specific voir dire questions* [MSB]

15. **NON-JURY TRIALS** – N/A

16. **TRIAL COUNSEL** (List the names of trial counsel for all parties).

   Vincent E. Gentile, Esq.
   Drinker Biddle & Reath LLP
   105 College Road East
   Princeton, NJ 08648
   (Vincent.Gentile@dbr.com)
   Trial Counsel for Plaintiff Franklin Gardner

12

>Matthew S. Barndt, Esq.
>Drinker Biddle & Reath LLP
>105 College Road East
>Princeton, NJ 08648
>(Matthew.Barndt@dbr.com)
>Trial Counsel for Plaintiff Franklin Gardner
>
>Timothy J. Galanaugh, Esq.
>O'Connor Kimball LLP
>1810 Chapel Avenue West, Suite 130
>Cherry Hill, NJ 08002-4607
>(TGalanaugh@okllp.com)
>Trial Counsel for Defendants George Achebe and Correctional Medical Services, Inc.

17. **BIFURCATION** (Where appropriate, the issues relating to liability shall be severed and tried to verdict. Thereafter, all issues relating to damages will be tried.)

>The issues of liability and damages SHALL NOT be tried separately.

18. **ESTIMATED LENGTH OF TRIAL**

>\_\_\_1\_\_\_ DAYS FOR LIABILITY
>
>and
>
>\_\_\_1\_\_\_ DAYS FOR DAMAGES.

13

PR01/ 728079.2

AMENDMENTS TO THIS PRETRIAL ORDER WILL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED.

_____
Matthew S. Barndt, Esq.
Drinker Biddle & Reath LLP
Attorney for Plaintiff Franklin Gardner

TIMOTHY

_____
~~Thomas~~ J. Galanaugh, Esq.
O'Connor Kimball LLP
Attorney for Defendants, George Achebe
and Correctional Medical Services, Inc.

_____
UNITED STATES MAGISTRATE
JUDGE JOHN J. HUGHES

DATED: 6/25/08

(EXHIBIT LIST TO FOLLOW)

PR01/ 728079.2

## EXHIBIT "A-1"
## PLAINTIFF GARDNER'S PROPOSED TRIAL EXHIBITS

| PLAINTIFF'S EXHIBIT NO. | BATES NO. | DESCRIPTION | OBJECTION |
|---|---|---|---|
| P-1 | | Portions of Franklin Gardner's Medical Records | |
| P-2 | | Photographs of Franklin Gardner's keloid scarring | |
| P-3 | | Portions of the Deposition Transcript of Dr. George Achebe | |
| P-4 | | Portions of the Deposition Transcript of Dr. Yasser Soliman | |
| P-5 | | Portions of the Deposition Transcript of David Meeker | |
| P-6 | | Dr. George Achebe's Independent Contractor Physician Agreement dated 2/1/02 | |
| P-7 | | Dr. George Achebe's Employment Agreement dated 2/1/02 | |
| P-8 | | Proposal submitted by CMS to the State of New Jersey in response to RFP No. 95-X-22764 | |
| P-9 | | Contract between CMS and the State of New Jersey, including amendments | |
| P-10 | | CMS Policy and Procedures Manual | |

15

| | | | |
|---|---|---|---|
| P-11 | | CMS Chronic Pain Management Pathway | |
| P-12 | | N.J.A.C. 16-1.1 to 16-2.23 and 16-5.1 to 16-5.5 | |
| P-13 | | Letter to Franklin Gardner from Robert D. Edmiston dated June 23, 1997 | |
| P-14 | | Letter to Governor Christine Whitman from Franklin Gardner dated July 27, 1999 | |
| P-15 | | Letter to Franklin Gardner from Howard Beyer dated August 6, 1999 | |
| P-16 | | Letter to Shelia Lee from Chris Bartolomei dated September 2, 1999 | |
| P-17 | | Letter to Franklin Gardner from Ellen Warner dated June 1, 2000 | |
| P-18 | | Letter to Loretta O'Sullivan from Senator Wayne Bryant dated November 15, 2001 | |
| P-19 | | Letter to Loretta O'Sullivan from Senator Wayne Bryant dated March 14, 2002 | |
| P-20 | | Letter to Franklin Gardner from Shirley Tyler dated August 6, 2002 | |

**EXHIBIT "A-2"**
**DEFENDANTS' OBJECTIONS TO PLAINTIFF GARDNER'S PROPOSED TRIAL EXHIBITS**

| PLAINTIFF'S EXHIBIT NO. | DEFENDANTS' OBJECTION(S) |
|---|---|
| P-1 | |
| P-2 | |
| P-3 | |
| P-4 | |
| P-5 | |
| P-6 | |
| P-7 | |
| P-8 | |
| P-9 | |
| P-10 | |
| P-11 | |
| P-12 | |
| P-13 | Hearsay |
| P-14 | |
| P-15 | Hearsay |
| P-16 | |
| P-17 | |
| P-18 | Hearsay |
| P-19 | Hearsay |
| P-20 | Hearsay |

17

PR01/ 728079.2